IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
INSPIRED CAPITAL, LLC, and
ERICA GARY, derivatively on behalf of
INSPIRED FOOD SOLUTIONS, LLC,

        *Plaintiffs*,

   − against −

CONDÉ NAST, an unincorporated division
of Advance Magazine Publishers, Inc., and
FREMANTLEMEDIA NORTH AMERICA, INC.,
a foreign corporation,

        *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:18-cv-00712-JFK

**CONDÉ NAST'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

GREENBERG TRAURIG, LLP
54 State Street
Sixth Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499

*Attorneys for Condé Nast, an unincorporated
division of Advance Magazine Publishers, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .......................................................................................................................1

I. PLAINTIFFS' CLAIMS FAIL BECAUSE IFS DOES NOT OWN THE RECIPES AND FOOD PRODUCTS DEVELOPED UNDER THE LICENSE AGREEMENT ...........................................................................................1

    A. The Unambiguous Terms of the Agreement Preclude Plaintiffs' Claims. ..............1

    B. Plaintiffs Cannot Establish Damages. ......................................................................3

II. EVEN ASSUMING IFS OWNED THE RECIPES, EACH OF PLAINTIFFS' CLAIMS ARE DEFECTIVE ...................................................................................4

    A. Plaintiffs Cannot Establish Breach of Contract. ......................................................4

    B. Plaintiffs' Fraud Claims Are Unsupported and Unsupportable. ..............................5

        1. The Fraudulent Concealment Claim is Not Viable. .......................................5

            (a) Defendants Had No Duty To Disclose. ...................................................5

            (b) Plaintiffs' Allegations of Scienter Are Inadequate ...............................7

            (c) Plaintiffs Cannot Allege Justifiable Reliance by IFS or Damages. .....................................................................................................8

        2. The Aiding and Abetting Fraud and Conspiracy to Commit Fraud Claims Are Not Viable. .................................................................................8

    C. The Aiding and Abetting Breach of Fiduciary Duty Claim Is Not Viable. .............8

    D. The Misappropriation Claim Fails as a Matter of Law. ..........................................9

III. NECESSARY AND INDISPENSABLE PARTIES HAVE NOT BEEN JOINED ...............................................................................................................10

CONCLUSION ..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Deadco Petroleum v. Trafigura AG*,
   151 A.D.3d 547 (1st Dep't 2017) ..................................................................................9

*Elghanian v. Harvey*,
   249 A.D.2d 206 (1st Dep't 1998) ..................................................................................6

*Guzy v. New York City*,
   129 A.D.3d 614 (1st Dep't 2015) ..................................................................................9

*Henry v. Bank of America*,
   147 A.D.3d 599 (1st Dep't 2017) ..................................................................................9

*Jana L. v. West 129th St. Realty Corp.*,
   22 A.D.3d 274 (1st 2005) ..............................................................................................6

*Lehman Bros. v. Hughes Hubbard & Reed, L.L.P.*,
   92 N.Y.2d 1014 (1998) ..................................................................................................9

*Lehman Bros. v. Hughes Hubbard & Reed, L.L.P.*,
   245 A.D.2d 203 (1st Dep't 1997) ..................................................................................9

*Midwest Goldbuyers, Inc. v. Brink's Global Services USA, Inc.*,
   120 A.D.3d 1150 (1stt Dep't 2014) ................................................................................9

*Midwest Memorial Group, LLC v. International Fund Services (Ireland) Ltd.*,
   2011 WL 4916407 (S.D.N.Y. Oct. 17, 2011) ................................................................9

*Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v.
   Salomon Brothers International*,
   251 A.D.2d 137 (1st Dep't 1998) ..................................................................................5

*Synergetics USA, Inc. v. Alcon Laboratories, Inc.*,
   2009 U.S. Dist. LEXIS 58899 (S.D.N.Y. July 9, 2009) ..............................................10

**Statutes and Other Authorities**

New York Civil Practice Law and Rules 205(a) ........................................................................8, 9

Federal Rule of Civil Procedure 9(b) ............................................................................................8

Federal Rule of Civil Procedure 12(b)(6) .....................................................................................1

Federal Rule of Civil Procedure 12(b)(7) .....................................................................................1

28A N.Y. Practice, Contract Law § 21:20 ....................................................................................6

Condé Nast, by and through its attorneys, Greenberg Traurig, LLP, respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint in its entirety and with prejudice pursuant to FRCP 12(b)(6) and 12(b)(7).

## PRELIMINARY STATEMENT

Plaintiffs' opposition to this motion conclusively establishes that Plaintiffs have no viable claims against Defendants. Plaintiffs have no factual support for their allegations that IFS owns certain confidential information and trade secrets that were purportedly stolen or used by Condé Nast and Fremantle. To the contrary, the License Agreement establishes that IFS neither acquired nor retained any rights to the recipes and food products that were developed pursuant to the License Agreement. And even if IFS did acquire such rights, Plaintiffs' claims are time barred and otherwise defective as a matter of law. The Complaint should be dismissed, and Plaintiffs denied leave to replead because any amendments would be futile.

## ARGUMENT

**I. PLAINTIFFS' CLAIMS FAIL BECAUSE IFS DOES NOT OWN THE RECIPES AND FOOD PRODUCTS DEVELOPED UNDER THE LICENSE AGREEMENT**

    **A. The Unambiguous Terms of the Agreement Preclude Plaintiffs' Claims.**

All of Plaintiffs' claims are predicated on IFS's ownership of the recipes and food products that comprised the "Licensed Goods" under the License Agreement. There can be no legitimate dispute that the License Agreement unambiguously establishes that IFS does not own these recipes and food products. Recognizing that the License Agreement forecloses its claims, Plaintiffs seek to divert the analysis with irrelevant matters, unsupported assertions, and a strawman argument. These distractions are merely that, and merit little consideration.

In its opening brief, Condé Nast identifies numerous provisions of the License Agreement that demonstrate that IFS obtained no ownership in the recipes or food products

1

developed by the parties pursuant to the License Agreement.  (*See* Defs' Br. at 8-10 (citing License Agreement Ex. A, §§ 1.0, 1.1, 1.2, 1.5, 2.4.1, 11.2.1).)  Plaintiffs do not grapple with Condé Nast's actual arguments, but instead attempt to refute an argument that Condé Nast simply does not make, *i.e.*, that the "Licensed Goods" are a subset of the "Licensed Property." (*See* Pls' Br. at 4-14.)  What Condé Nast did argue, and Plaintiffs fail to address, is the fact that the License Agreement, read as a whole, disposes of Plaintiffs' claim that IFS owns the recipes and food products developed in connection with the Licensed Goods.

Plaintiffs do not and cannot identify a single provision of the License Agreement that supports IFS's ownership.  Rather, Plaintiffs maintain that IFS's ownership rights spring, not from the License Agreement, but from IFS's Operating Agreement.  That is nonsense.  At best, the Operating Agreement provides that any of IFS's "Intellectual Property" is "Confidential Information" that may not be disclosed by IFS's "Members."  (Pls' Br. at 2-3; Compl. Ex. 1, Article XVI.)  While the Operating Agreement may be relevant to whether IFS has claims against Harris for breach of the Operating Agreement, its terms are absolutely irrelevant to the issue of whether IFS owns the recipes or food products developed pursuant to the License Agreement.  For that inquiry, the License Agreement is dispositive and fatal.

Plaintiffs' reliance on the parties' Deal Memorandum (Pls' Br. at 3-4), is similarly unavailing.  There is nothing in that document that supports the notion that IFS would "own" the food products that it agreed to develop under the License Agreement. (*See* Compl. Ex. B.)  The fact that the Deal Memorandum authorized IFS to use the SELF® brand to "produce, distribute and sell" the Licensed Goods during the term of the License Agreement (*id.*, at 1), in no way supports IFS's assertion that it **owned** those goods or retained any right in them after the

termination of the License Agreement. Indeed, that assertion is foreclosed by the unambiguous terms of the License Agreement.

Plaintiffs' contention that Defendants have "ignored" their factual allegations concerning IFS's ownership is inaccurate. Defendants specifically addressed a number of the Complaint's allegations and established, based on the exhibits attached to the Complaint, that those allegations mischaracterized the referenced documents. (*See* Defs' Br. at 11-12 (comparing Compl. ¶¶ 38 & 10, with Compl. Ex. D; comparing Compl. ¶ 39 with Compl. Ex. E; comparing Compl. ¶ 101 with Compl. § 2.4; comparing Compl. ¶¶ 72-73 with Compl. Ex. G).) Plaintiffs have no answer to Defendants' assertions or any explanation for their distortion of the records.

The only allegations identified by Plaintiffs that Defendants allegedly "ignored" are paragraphs 15-23 of the Complaint. (Pls' Br. at 2.) However, those allegations merely describe the initial formation of and cash infusion to IFS. They do not give rise to any plausible inference that IFS owns the recipes and food products. Indeed, at the point in time underlying those allegations, the recipes and food products had not been developed. (Compl. ¶¶ 15-23.) To the contrary, the parties created the Licensed Goods over the course of eight months pursuant to the License Agreement. (*Id.* ¶ 30.)

Finally, Plaintiffs have no answer to the fact that, if the parties intended to give IFS post-termination rights to the Licensed Goods (or the recipes or food products that were used to develop them), they certainly would have said so in the License Agreement. Instead, the License Agreement requires upon termination that IFS "immediately cease" all "use" of the Licensed Goods and "other materials describing the Licensed Goods." (Compl. Ex. C § 11.2.1.)

**B.     Plaintiffs Cannot Establish Damages.**

Plaintiffs concede that IFS cannot recover damages based on its inability to sell the Licensed Goods. (Pls' Br. at 12.) Nonetheless, Plaintiffs maintain that IFS may recover

3

damages based on an ability to license any intellectual property rights underlying the Licensed Goods, and the unauthorized use of such intellectual property.  (*Id.*)  This argument too is precluded by the License Agreement.

Plaintiffs' attempt to divorce the recipes and "confection methods" used to develop the Licensed Goods from the Licensed Goods themselves (Pls' Br. at 12) is insupportable and must be rejected.  Under the unambiguous terms of the License Agreement, IFS is prohibited from the "use or sale of the Licensed Goods, Promotional Materials, or other materials describing the Licensed Goods."  (Compl. Ex. 3, § 11.2.1.)   Any recipes and "confection methods" used to create the Licensed Goods fall within this provision.

Moreover, even if IFS did own the recipes, Plaintiffs do not allege that Defendants prohibited IFS from licensing any intellectual property to any third parties.  Nor are there any allegations giving rise to a plausible inference that Defendants engaged in the unauthorized use of such intellectual property.  Rather, Plaintiffs allege that Harris, Howell and Benevida engaged in such use.  Because Plaintiffs cannot allege any viable theory of damages against Condé Nast or Fremantle, the Complaint should be dismissed in its entirety.

## II. EVEN ASSUMING IFS OWNED THE RECIPES, EACH OF PLAINTIFFS' CLAIMS ARE DEFECTIVE

### A. **Plaintiffs Cannot Establish Breach of Contract.**

In the Complaint, Plaintiffs allege that Defendants breached the License Agreement by allowing Benevida to use IFS's food recipes, meals, product packaging, and other items.  (Compl. ¶¶ 85, 94-97.)  Recognizing that these allegations are deficient as a matter of law, Plaintiffs now argue that Defendants breached the agreement by "using" IFS's "confidential business plans" and the terms of the License Agreement by entering into a license agreement with Benevida. (Pls' Br. at 15.)  These assertions are nonsense.

First, IFS's suggestion that the concept of a "line of frozen food products to be sold under the "SELF" brand" (Pls' Br. at 15) constitutes a "confidential business plan" protectable under the License Agreement is absurd. The Complaint refutes any notion that this "plan" was confidential, since the parties intended the "plan" to be a matter of public knowledge (Compl. Exs. D & E), and Harris and Howell, who created Benevida, had knowledge of the plan without any disclosure or use by Defendants. (*Id*. ¶¶ 17, 41) Moreover, the Complaint does not and cannot plausibly allege that Defendants "used" IFS's business plan when they entered into a license agreement with Benevida.

Second, the terms of the License Agreement cannot be deemed IFS's "confidential" information protectable under Section 12.8 of the License Agreement. That provision protects information "relating to the business and operations of each party which each acquires, learns or has learned during or prior to the Term from the other" party. (Compl. Ex. 3, ¶ 12.8.) Defendants did not acquire or learn the terms of the License Agreement from IFS, they negotiated them. IFS has no greater claim to those terms than Defendants.

### B.     **Plaintiffs' Fraud Claims Are Unsupported and Unsupportable.**

#### 1.     **The Fraudulent Concealment Claim is Not Viable.**

Plaintiffs' fraudulent concealment claim, which is premised on allegations that Defendants failed to disclose Harris's purported scheme in communications with Harris, fails for at least four reasons.

##### (a)     Defendants Had No Duty To Disclose

Plaintiffs do not dispute that Defendants had no fiduciary duty to IFS. Nonetheless, Plaintiffs maintain that, "by virtue of the Deal Memo and IFS License Agreement," the parties were in a "confidential relationship." (Pls' Br. at 16.) This conclusory allegation is insufficient as a matter of law. A "confidential relationship" is one that involves a "high degree of

5

dominance and reliance" that "existed prior to the transaction giving rise to the alleged wrong, and not as a result of it." *Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l*, 251 A.D.2d 137, 138 (1st Dep't 1998); *accord Elghanian v. Harvey*, 249 A.D.2d 206, 206 (1st Dep't 1998). The mere existence of an agreement between the parties, standing alone, is insufficient to give rise to any special relationship. *See* 28A N.Y. Prac., Contract Law § 21:20 (explaining that "regular business relations, do not, without more, rise to the level of a fiduciary or confidential relationship.") (citing cases). Here, Plaintiffs' allegations of a contractual relationship between the parties are insufficient as a matter of law to give rise to the plausible inference of a confidential relationship.

Plaintiffs' speculative allegation that Defendants had "superior knowledge" is similarly insufficient. (Pls' Br. at 16; Compl. ¶ 122.) In order to establish superior knowledge giving rise to a duty to disclose, a party must allege that material information was peculiarly within the knowledge of the defendant, and that the information was such that the plaintiff could not have discovered it through the exercise of ordinary intelligence. *See Jana L. v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 278 (1st 2005). Here, the activities of Harris were not particularly within Defendants' knowledge, nor were his actions undiscoverable by IFS. Moreover, the allegations establish that Defendants were dealing exclusively with Harris, not anyone else from IFS. Regardless of whether Harris's actions may be imputed to IFS (Pls' Br. at 16 n.9) – an analysis that is entirely irrelevant here – Defendants had no obligation or reason to inform Harris about his own actions. Clearly, Plaintiffs' objection is that Defendants did not disclose Harris's actions to IFS's members, "Inspired and Gary, or request that Harris inform them." (Compl. ¶ 75; *see also id.* ¶¶ 78, 112, 114, 115, 116, 119-124.) But Defendants had no relationship with or duty to them, and had no insight into Harris's communications with them.

Plaintiffs' assertion that a duty arose out of partial or ambiguous statements about the "then state of affairs" is also without merit. (Pls' Br. at 17.) The two communications relied upon by Plaintiff are neither partial nor ambiguous (*see* Comp. Ex. F; Neidl Decl. Ex. 2), and since the statements were made to Harris as CEO of IFS, the suggestion that Defendants were required to inform him of his own actions is nonsensical.

(b)     Plaintiffs' Allegations of Scienter Are Inadequate

Plaintiffs maintain that the allegations of the Complaint at paragraphs 59-62 and 66-82 are sufficient to establish Defendants' scienter. (Pls' Br. at 16-17.) However, even a cursory reading of those allegations demonstrates the fallacy of Plaintiffs' assertion. Although Defendants were aware that Harris had created a new entity to take over IFS's obligations when it became insolvent, Plaintiffs did not and cannot plausibly allege that Defendants were aware that Harris was engaged in any wrongdoing vis-à-vis IFS, or that Defendants knew that IFS (which was controlled by Harris) did not know about Harris's activities. (Defs' Br. at 16.) Moreover, the documents attached to the Complaint establish that Defendants were acting in good faith and dealing exclusively with Harris as CEO of IFS. (Compl. Exs. F, G, H.)

Plaintiffs apparently do not dispute that the allegations in the Complaint concerning Defendants' "motive" defy logic. (*See* Defs' Br. at 16; Compl. ¶ 123.) Plaintiffs have abandoned those allegations, and now claim that Defendants were motivated to replace IFS with Benevida so that they could "manufacture a premise under which they could assert ownership of the Licensed Goods." (Pls' Br. at 18.) But Defendants have not asserted ownership of the Licensed Goods, only that IFS has no ownership of them. Plaintiffs' new convoluted theory of motive is just as implausible as the one alleged in the Complaint.

### (c) Plaintiffs Cannot Allege Justifiable Reliance by IFS or Damages

Plaintiffs do not dispute that the Complaint includes no allegations demonstrating justifiable reliance by IFS and damages resulting from Defendants' January 10, 2014 "Demand for Payment and Notice of Breach" email to Harris. The Complaint merely alleges that as a result of the email, IFS "continued doing business as usual." (Compl. ¶¶ 114, 116.) And other than doing business as usual, the Complaint does not allege any actions taken by IFS or resulting damages due to Defendants' purported failure to disclose Harris's allegedly fraudulent scheme. Plaintiffs' claim that IFS would have taken "timely protective measures" to protect its property (Pls' Br. 19) is not alleged in the Complaint, is speculative and insufficient as a matter of law.

### 2. The Aiding and Abetting Fraud and Conspiracy to Commit Fraud Claims Are Not Viable.

Plaintiffs concede that the Complaint is devoid of allegations establishing that Harris made any affirmative misrepresentations to IFS. (Defs' Br. at 18-19; Pls' Br. at 19.) In an attempt to salvage their fraud claims, Plaintiffs maintain that Harris's fraudulent conduct consisted of "the concealment of his actions against IFS's interests." (Pls' Br. at 19.) This assertion, and the allegations in the Complaint, are clearly insufficient under FRCP 9(b) and to state a plausible underlying claim for fraud. Similarly futile is Plaintiffs' attempt to cure the deficiencies of its conclusory allegations of "substantial assistance." (Compl. ¶¶ 128-29, 134-35.) Plaintiffs do not allege that Defendants knowingly assisted Harris in concealing his actions against IFS's interests. Nor did Defendants "conceal" from IFS their dealings with Benevida.

### C. The Aiding and Abetting Breach of Fiduciary Duty Claim Is Not Viable.

Plaintiffs' aiding and abetting breach of fiduciary duty claim is untimely. Contrary to Plaintiff's contention, CPLR 205(a) is inapplicable when the prior action is filed outside New York State. Plaintiffs fail to disclose that seemingly every court to address this issue has so

8

held.[1]  Plaintiffs' reliance on *Lehman Bros. v. Hughes & Reed, L.L.P.*, to argue the opposite is misplaced since, at the outset, the Court of Appeals expressly stated that it "assume[d], without deciding, the applicability of CPLR 205(a)."  92 N.Y.2d 1014, 1015 (1998).  *See Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ireland) Ltd.,* 2011 WL 4916407, at *6 (S.D.N.Y. Oct. 17, 2011) (holding plaintiff misplaced reliance on *Lehman Bros.* in arguing that CPLR 205(a) applied when prior action is filed outside the state).

Plaintiffs' reliance on the continuing wrong doctrine is similarly unavailing.  The doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct."  *Henry v. Bank of Am.*, 147 A.D.3d 599, 601 (1st Dep't 2017).  Here, the Complaint's allegations of breach refer to Harris's conduct in December 2013 through January 2014, when he created Benevida and allegedly "stole" IFS's property.  (Compl. ¶¶ 58-88, 100-104.)  The fact that the contractual relationship between Benevida and the Defendants continued until April 2015 (Pls. Br. at 21), is of no moment.

This claim also fails for the same reason Plaintiffs' fraud claims fail.  Defendants dealt with Harris as CEO of IFS, and had no actual knowledge that Harris was engaged in any purported wrongdoing with respect to IFS.

### D. The Misappropriation Claim Fails as a Matter of Law.

Plaintiffs' misappropriation claim is also untimely under the applicable three-year statute of limitations (Defs' Br. at 22), and as established above, not saved by CPLR 205(a).  Nor is the continuing wrong doctrine applicable, because Plaintiffs do not and cannot allege that Defendants used or disclosed the recipes.  Moreover, the doctrine does not apply where, as here,

---

[1] *See, e.g.*, *Deadco Petroleum v. Trafigura AG*, 151 A.D.3d 547 (1st Dep't 2017) ( holding an out-of-state action is not a "prior action" within the meaning of CPLR 205(a)"); *Guzy v. New York City*, 129 A.D.3d 614, 615 (1st Dep't 2015) (same); *Midwest Goldbuyers, Inc. v. Brink's Global Services USA, Inc.*, 120 A.D.3d 1150, 1150 (1st Dep't 2014) (same); *Lehman Bros. v. Hughes Hubbard & Reed, L.L.P.*, 245 A.D.2d 203, 203 (1st Dep't 1997) (same); *aff'd on limited grounds*, 92 N.Y.2d 1014 (1998).

the plaintiff "had knowledge of the defendant's misappropriation and use of its trade secret." *Synergetics USA, Inc. v. Alcon Labs., Inc.*, 2009 U.S. Dist. LEXIS 58899, at *6 (S.D.N.Y. July 9, 2009). Finally, while Plaintiffs have clarified that their misrepresentation claim is predicated solely on the recipes underlying the Licensed Goods (Pls' Br. at 23), Plaintiffs fail to allege any facts plausibly suggesting that those recipes constitute trade secrets (*see generally* Compl.).

**III.   NECESSARY AND INDISPENSABLE PARTIES HAVE NOT BEEN JOINED**

There can be no dispute that Plaintiffs' claims against Harris, Howell and Benevida, which are currently pending in Florida state court, are predicated on the same facts asserted here. Plaintiffs' assertion that Harris, Howell and Benevida have no interest in the subject matter of this action (Pls' Br. at 24) is refuted by the pleadings and other papers in that action. (*See, e.g.,* Neidl Decl. Exs. 3-7 (reflecting disputed claims of ownership over the recipes at issue here).) Proceeding in their absence unquestionably would impair their ability to protect their interests, and any findings here that they engaged in misconduct could subject them to liability to Defendants. Plaintiffs' assertion that Harris and Howell are not subject to personal jurisdiction in this Court merely because they live in Florida (*id.*), is wrong as a matter of law and ignores their specific contacts with New York. Finally, Plaintiffs' accusation that Defendants have taken "inconsistent positions" fails to account for the fact that Plaintiffs brought suit against Defendants in Florida in clear violation of the License Agreement. Plaintiffs' predicament is caused not by Defendants, but by Plaintiffs failure to pursue its pending claims in Florida.

## **CONCLUSION**

For the foregoing reasons, Condé Nast respectfully requests that the Court issue an order dismissing the Complaint in its entirety and with prejudice, and granting Defendants such other and further relief as the Court deems appropriate.

Dated:  May 23, 2018

GREENBERG TRAURIG, LLP

By:  */s/ Cynthia Neidl*
   Michael J. Grygiel
      (*pro hac vice* to be submitted)
   Cynthia E. Neidl
   Kelly L. McNamee
   54 State St., 6th Floor
   Albany, New York, 12207
   Tel:  (518) 689-1400
   Fax:  (518) 689-1499
   Email:  grygielm@gtlaw.com
           neidlc@gtlaw.com
           mcnameek@gtlaw.com

*Attorneys for Defendant Condé Nast, an unincorporated division of Advance Magazine Publishers, Inc.*

ALB 2120926v3

11