**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/26/2018

INSPIRED CAPITAL, LLC, and    :
ERICA GARY, derivatively on    :
behalf of INSPIRED FOOD    :
SOLUTIONS, LLC,    :
   :
         Plaintiffs,    :
   :
   -against-    :    No. 18 Civ. 0712 (JFK)
   :    **OPINION & ORDER**
CONDE NAST, an unincorporated    :
division of Advance Magazine    :
Publishers, Inc., and    :
FREMANTLEMEDIA NORTH AMERICA,    :
INC., a foreign corporation,    :
   :
         Defendants.    :
------------------------------- X

APPEARANCES

FOR PLAINTIFFS INSPIRED CAPITAL, LLC and ERICA GARY
     Scott Ross Zarin, Esq.
     ZARIN & ASSOCIATES, P.C.

FOR DEFENDANT CONDE NAST
     Cynthia Evans Neidl, Esq.
     GREENBERG TRAURIG, LLP

FOR DEFENDANT FREMANTLEMEDIA NORTH AMERICA, INC.
     Judith Ann Lockhart, Esq.
     CARTER LEDYARD & MILBURN LLP
     Lauren H. Bragin, Esq.
     Sean Riley, Esq.
     GLASER WEIL LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendants Conde Nast and

FremantleMedia North America, Inc. ("Fremantle") to dismiss the

complaint filed by Plaintiffs Inspired Capital, LLC ("Inspired")

and Erica Gary ("E. Gary"), derivatively and on behalf of

Inspired Food Solutions, LLC ("IFS"), for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), comply with the pleading requirements of Federal Rule of Civil Procedure 9(b), and join necessary and indispensable parties. For the reasons set forth below, Defendants' motion is granted.

## I.    Background

### A. Factual Background

For the purposes of this motion to dismiss, the facts as alleged in the complaint are assumed to be true.

### 1. The Formation of IFS and Inspired

Calvin Harris ("Harris") formed IFS -- a Florida limited liability company with its principal place of business in Miami-Dade County, Florida -- in 2012 to develop, manufacture, and distribute lifestyle food brands and products. (Compl. ¶ 15.) Harris hired E. Gary and the company Davis Gary Trusted Advisors as consultants to help raise capital from investors, including Issa Gary ("I. Gary") and Demetrius Walton ("Walton"). (Id. ¶ 16.)  Harris explained to I. Gary and Walton that he intended to develop a line of frozen food entrees that would be owned by IFS but marketed and promoted by Fremantle and Conde Nast under Conde Nast's SELF Brand. (Id. ¶ 17.)  I. Gary and Walton decided to invest in IFS and formed the company Inspired, a Florida limited liability company with its principal place of business in Miami-Dade County, Florida, to be able to do so. (Id. ¶ 18.)

On or about March 2013, IFS and Inspired entered into a Memorandum of Understanding ("MOU") pursuant to which Inspired infused an initial $100,000 of working capital into IFS to secure a marketing and promotion agreement with Conde Nast and Fremantle, Conde Nast's authorized representative. (Id. ¶ 20.)

## 2. IFS' Operating Agreement

On or about May 7, 2013, Inspired, Harris, and E. Gary entered into the Florida Limited Liability Company Agreement of Inspired Food Solutions, Inc. (the "Operating Agreement"), pursuant to which Inspired made another capital contribution of $500,000. (Id. ¶ 21-22.)  In return, Inspired received a fifteen percent interest in IFS and the right to quarterly royalties and other payments, including a $1.5 million lump sum payment on or before December 31, 2018. (Id. ¶ 22.)  Harris made no capital contribution to IFS but retained eighty-four percent of the company. (Id. ¶ 22.)  E. Gary received the remaining one percent. (Id. ¶ 23.)

## 3. The License Agreement with Conde Nast and Fremantle and IFS' Development of Recipes and Food Products

After executing the Operating Agreement, Harris started developing food recipes and spent about eight months testing and refining them. (Id. ¶ 30.)  On March 15, 2013, he executed a Binding Merchandising Deal Memo ("Deal Memo") with Conde Nast and Fremantle, which outlined the terms pursuant to which Conde Nast would grant a license to IFS to use Conde Nast's SELF

trademark to produce, distribute, and promote IFS' food products in exchange for royalties. (Id. ¶ 31.)  In May 2013, IFS, Conde Nast, and Fremantle executed a License Agreement (the "IFS License Agreement"), which adopted the terms outlined in the Deal Memo. (Id. ¶ 32.)  The IFS License Agreement also contained a confidentiality provision prohibiting the parties from disclosing or using each other's confidential information. (Compl. Ex. C § 12.8.)

### 4. Harris Dissolves IFS and Forms Benevida

Plaintiffs claim that five days after Defendants prepared a Press Kit for their collaboration with IFS, Harris concocted a scheme to oust Inspired and E. Gary as members of IFS. Plaintiffs contend that Harris wanted only himself, a new potential investor named Steve Howell ("Howell"), Conde Nast, and Fremantle to "reap the economic benefits of IFS' food recipes, the food products developed with the recipes and other IFS[] Intellectual Property and Confidential Information." (Compl. ¶ 40.)

According to Plaintiffs, on or about November 26, 2013, Harris contacted and informed Howell of an investment opportunity relating to the frozen food products IFS developed. (Id. ¶ 41.)  Shortly afterwards, Harris and Howell began to devise ways to oust Inspired and E. Gary from IFS. (Id. ¶ 42.) Their first plan was to have Howell make an offer to purchase

Inspired's and E. Gary's interests in IFS, and to induce E. Gary and Inspired into accepting the offer by claiming that IFS was insolvent. (Id. ¶¶ 43-44.) According to Plaintiffs, there two reasons why IFS was indeed still solvent: first, Inspired and E. Gary had agreed to secure additional financing for the company, and, second, IFS had secured an extension for an upcoming payment owed to Conde Nast and Fremantle that IFS had been at risk of missing. (Id. ¶¶ 44-47.)

Plaintiffs allege that Harris had to find an excuse to renege on the financing agreement with Inspired and E. Gary in order to claim insolvency. (Id. ¶ 47.) To that end, on December 29, 2013, Harris sent them an email claiming that he had "become very uncomfortable with being forced into signing an agreement or agreeing to a [financing] proposal," and, therefore, would prefer to "present and discuss a counter-proposal." (Id. ¶ 48.) He forwarded them Howell's buyout proposal the following day. (Id. ¶ 51.) Inspired made a counter offer, which Howell rejected. (Id. ¶ 53.)

Plaintiffs allege that, unable to force Inspired and E. Gary to accept a buyout, Harris and Howell "decided they would steal IFS's Intellectual Property, Confidential Information, and employees and continue doing business as usual with Conde Nast and Fremantle." (Id. ¶ 54.) To enact this plan, Harris first emailed Inspired and E. Gary to tell them that IFS was insolvent

and was dissolved effective immediately -- an action Plaintiffs "immediately rejected." (Id. ¶ 55.) Harris then, along with Howell, formed Benevida Foods, LLC ("Benevida") to continue to market and produce food products with Conde Nast and Fremantle. (Id. ¶ 57).

### 5. Conde Nast and Fremantle Contract with Benevida

On or before January 7, 2014, Harris contacted Conde Nast's Vice President, John Kulhawik ("Kulhawik"), and Fremantle's Vice President of Consumer Products, Andrea Brent ("Brent"), "to get support and assistance for the plan" to sell IFS' food recipes and products through Benevida. (Id. ¶ 59.) He told Kulhawik and Brent about Benevida and that he hoped to contract with Conde Nast and Fremantle to "market and promote the sale of the IFS food products via Benevida instead of via IFS." (Id. ¶ 62.) According to Plaintiffs, "Kulhawik and Brent knew that IFS and not Benevida owned the IFS food recipes and food products and that Benevida did not have the right to use the IFS food recipes and to see the IFS food products." (Id. ¶ 63.) Rather than reject Harris's offer on this ground, however, Defendants agreed to help Harris and Howell sell the IFS food products. (Id. ¶ 64.)

Plaintiffs contend that Kulhawik and Brent concealed Conde Nast and Fremantle's role in Harris and Howell's plan. According to Plaintiffs, neither Kulhawik, Brent, or Fremantle's

in house counsel, informed IFS, or requested Harris inform IFS, of Benevida's intentions to sell the IFS food products. (Id. ¶¶ 65-75.)

On January 13, 2014, Kulhawik emailed Harris a letter immediately terminating the IFS License Agreement and IFS' ability to distribute its food products under Conde Nast's SELF trademark. (Id. ¶ 77.)  In his email, Kulhawik made no mention to Inspired or E. Gary "that he knew of and had agreed to have Conde Nast and Fremantle help Harris and Howell with their plan to have Benevida deviously sell the food products developed with IFS's recipes created with the monies Inspired infused into IFS."  (Id. ¶ 78.)

Two days after sending the termination email, Kulhawik emailed Harris at his personal e-mail address to inform him that "Conde Nast was on board with working with Benevida while the legal issues regarding IFS were worked out and that Conde Nast and Fremantle would continue preparing the public relations campaign and the sales launch of the food products, albeit under Benevida's and not IFS's name." (Id. ¶ 79.)  On January 31, 2014, Conde Nast and Fremantle entered into a License Agreement with Benevida substantially similar to the IFS License Agreement. (Id. ¶ 62.)

In January 2014, Benevida began selling food products, which, according to Plaintiffs, were "developed and owned by

IFS," and "continued illicitly using IFS's Intellectual Property and Confidential information, including food recipes, meals, product packaging, product label approvals, commercial marketing materials, and supplier and client lists." (Id. ¶ 85.) Plaintiffs allege that Harris, who is not named as a defendant, materially breached IFS' Operating Agreement by "(1) unilaterally attempting to terminate the Operating Agreement and to improperly dissolve IFS; (2) stealing and intentionally misusing IFS's Intellectual Property, Confidential Information, and employees without IFS's written consent; (3) forming, working for and causing Benevida to compete against IFS; and (6) [sic] usurping business opportunities of IFS for his and the benefit of the others besides Inspired and Gary." (Id. ¶ 86.) Plaintiffs also allege that Harris, as the CEO of Inspired, "owed fiduciary duties and common-law and statutory duties . . . of loyalty, care and good faith to IFS and its members, including, but not limited to the duties to (1) further IFS's interests; (2) not compete with IFS; (3) not disclose, steal and wrongly misuse IFS's Intellectual Property and Confidential Information; (4) not divest IFS's business for his or the benefit of others; and (5) not usurp business opportunities of IFS for his or the benefit of others." (Id. ¶ 87.)

## B. Procedural History

On March 3, 2014, Plaintiffs sued Harris, Howell and Benevida in Eleventh Judicial Circuit of Florida. (Neidl. Decl. Ex. 3 at 14 (May 23, 2018), ECF No. 27-3.)  On March 13, 2014, Plaintiffs filed an emergency motion for a temporary injunction, which the Florida court granted. (Compl. Ex. K at 1-4.)  On August 30, 2016, the Florida court granted Plaintiffs' motion to file an amended complaint, which asserted breach of contract and fiduciary duty claims against Harris.  (Neidl. Decl. Ex. 6 at 15-19 (May 23, 2018), ECF No. 27-6.)  It also asserted aiding and abetting breach of fiduciary duty, civil conspiracy, and misappropriation of trade secrets claims against Conde Nast and Fremantle.  (Id. at 22-23, 27-28, 30-31).  On February 11, 2017, the Florida court granted a motion to dismiss brought by Conde Nast and Fremantle based on the forum selection clause in the License Agreement. (Neidl Decl. Ex. 7 at 3-4 (May 23, 2018), ECF No. 27-7.)

On January 26, 2018, Plaintiffs brought the instant action against Conde Nast and Fremantle asserting six causes of action against Defendants:  (1) breach of contract, (2) aiding and abetting breach of fiduciary duty, (3) fraudulent concealment, (4) aiding and abetting fraud, (5) conspiracy to commit fraud, and (6) misappropriation of trade secrets.

## II. Discussion

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011).  In determining the adequacy of the complaint, the Court may consider any document attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents which are integral to the complaint. Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam).  On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015).  In addition, the Court "should resolve any contractual ambiguities in favor of the plaintiff." Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

### B. Analysis

Plaintiffs have failed to plausibly allege any sustainable cause of action.  As a result, this Court declines to address

10

Defendants' argument that Plaintiffs have failed to plead ownership rights over the food products and recipes that Harris and IFS developed pursuant to the IFS License Agreement. (Defs.' Mem. of Law in Supp. of Motion to Dismiss the Compl. at 8 (May 23, 2018), ECF No. 28 [hereinafter "Mem."].)  Instead, this Court will address the merits of each of Plaintiff's individual causes of actions as if they had plausibly alleged ownership over IFS' food products and recipes.  Additionally, this Court declines to address whether Plaintiffs were required to join necessary parties under Federal Rule of Civil Procedure 19.

### 1. Plaintiffs Have Failed to Allege Breach of Contract

Under New York law, to make out a prima facie case of breach of contract, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

The IFS License Agreement prohibits each signer from disclosing "certain information relating to business and operations of the other which each acquires, learns or has learned during or prior to the Term from the other which is not commonly or currently known in the marketplace." (Compl. Ex. C § 12.8).  The Complaint alleges that Defendants violated this provision when "[r]ather than distance [themselves] from the

11

fraudulent scheme devised by Harris and Howell, Conde Nast and
Fremantle acquiesced and decided to participate in the scheme,
by, _inter alia_, entering into the Benevida License Agreement,
which allowed Benevida to improperly misuse IFS's Intellectual
Property and Confidential Information." (Compl. ¶ 95.)

Defendants argue that Plaintiffs have failed to adequately
allege that Defendants breached the IFS License Agreement
because all Plaintiffs have alleged is that Harris, Howell and
Benevida stole IFS' confidential information, not Conde Nast or
Fremantle. (Mem. at 13.)  According to Defendants, Plaintiffs
have, at most, alleged that "Conde Nast merely 'allowed'
Benevida to misuse IFS's information by entering into the
Benevida License Agreement." (Mem. at 14.)

Plaintiffs respond that their factual pleadings are
sufficient for this Court to draw the reasonable inference that
Defendants breached the IFS License Agreement because the
complaint alleges that (1) "during their interactions with IFS,
Defendants acquired intimate knowledge about IFS's confidential
business plans, including its plans to market frozen food
products under Conde Nast's 'SELF' brand, as well as the
confidential terms of their License Agreement with IFS, which
reflected the financial structure that IFS had negotiated based
on its own projections for the project," and (2) "Defendants
disregarded [Section 12.8] and breached the same when they used

the very concept that IFS came up with -- i.e., a line of frozen

food products to be sold under the 'SELF' brand -- to enter into

substantially the same license agreement with a different

company, Benevida Foods, LLC." (Opp. at 15.)

Plaintiffs' arguments are unavailing for two reasons.

First, the complaint does not allege that Defendants used IFS'

concept of "a line of frozen food products to be sold under the

'SELF' brand."  Rather, the complaint alleges that Harris and

Howell -- not Defendants -- "formed Benevida . . . , to do the

very thing that IFS had set out to do -- distribute via the SELF

brand the food products and food recipes developed with the

money Plaintiffs infused into IFS." (Compl. ¶ 62.)  Second, the

terms of the IFS License Agreement cannot be deemed IFS'

confidential information protectable under Section 12.8 as

Defendants negotiated the terms of the IFS License Agreement and

did not "acquire" or "learn" them.  Therefore, those terms

cannot be considered IFS' confidential information. (Compl. Ex.

C § 12.8; see also Reply Mem. of Law in Supp. of Defs.' Mot. to

Dismiss at 5 (May 23, 2018), ECF No. 32 [hereinafter "Reply"].)

## 2. Plaintiffs Have Failed to Allege Any Fraud Claim

Plaintiffs allege a fraudulent concealment claim, an aiding

and abetting fraud claim, and a conspiracy to commit fraud claim

against Defendants, which the parties agree are governed by New

York law. (See Mem. at 14; Opp. at 16 n. 8 (citing New York

law).)  In addition to complying with Federal Rule of Civil
Procedure 12(b)(6), these claims must also comply with the
heightened pleading requirement of Federal Rule of Civil
Procedure 9(b).

### a. Fraudulent Concealment

Under New York law, a fraudulent concealment claim has five
elements: "a relationship between the contracting parties that
creates a duty to disclose, knowledge of the material facts by
the party bound to disclose, scienter, reliance, and damage."
Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 582
(2d Cir. 2005).  To comply with Rule 9(b) and plead a fraudulent
concealment claim with sufficient particularity, a plaintiff
must, in addition to pleading the elements, allege: "(1) what
the omissions were; (2) the person responsible for the failure
to disclose; (3) the context of the omissions and the manner in
which they misled the plaintiff; and (4) what the defendant
obtained through the fraud." Manhattan Motorcars, Inc. v.
Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y.
2007); accord Manela v. Gottlieb, 784 F. Supp. 84, 87 (S.D.N.Y.
1992).

Plaintiffs have failed to allege what Conde Nast and
Fremantle obtained by failing to disclose to IFS' members that
Harris had started Benevida.  Specifically, Plaintiffs have
failed to identify what financial gain Defendants obtained by

switching from IFS to Benevida; indeed, according to the Complaint, Defendants would have received royalties from IFS had IFS launched the food products. (Id. ¶ 33.)  The complaint contains no allegations that the profits from partnering with Benevida would have been any greater than the royalties Defendants would have received from IFS.  Plaintiffs try to compensate for this failure by arguing that, by partnering with Benevida, Defendants were able to assert a claim for ownership over the food products. (Opp. at 18.)  This allegation, however, fails to appear in the complaint and, therefore, cannot be considered now. See Feldman v. Sanders Legal Grp., 914 F. Supp. 2d 595, 600 (S.D.N.Y. 2012) (declining to consider arguments "based on facts and theories that are not in the Complaint").

Even if Plaintiffs had complied with Rule 9(b), their fraudulent concealment claim still fails because they have not adequately pleaded damages.  "New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses." Kregos v. Associated Press, 3 F.3d 656, 665 (2d Cir. 1993).  Plaintiffs argue that because of Defendants' fraudulent concealment, "IFS was unable to take timely protective measures to protect its property and interest in the License Agreement." (Opp. at 18.)  Plaintiffs cite to their allegations in the complaint that, because Defendants did not tell Plaintiffs about Harris and Howell's

scheme, Plaintiffs "continued doing business as usual,
including, but not limited to, (1) discussing the upcoming sales
launch with suppliers and making sure the suppliers were fully
prepared to ship the food products, and (2) securing capital to
ensure IFS's success in selling the food products." (Compl. ¶
116; see also Opp. at 18-19.)  These allegations do not
demonstrate any "actual pecuniary losses" incurred by
Plaintiffs.  Consequently, Plaintiffs have failed to plead the
damages element necessary to establish liability for fraudulent
concealment. See Marc J. Bern & Partners LLP v. U.S. Legal
Support, Inc., No. 17 CIV. 6771 (ER), 2018 WL 2943784, at *4
(S.D.N.Y. June 11, 2018) (stating that a plaintiff's fraud claim
would likely fail at the motion to dismiss stage because at "no
point in the Complaint does Plaintiff explicitly state that
Plaintiff incurred losses resulting from [the fraudulent]
misrepresentations").

### b. Aiding and Abetting Fraud and Conspiracy to Commit Fraud

To plead both aiding and abetting fraud and conspiracy to
commit fraud, a defendant must first establish the existence of
a fraud by alleging "(1) a misrepresentation or a material
omission of fact which was false and known to be false by
defendant, (2) made for the purpose of inducing the other party
to rely upon it, (3) justifiable reliance of the other party on
the misrepresentation or material omission, and (4) injury."

Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d
Cir. 2009) (quoting Lama Holding v. Smith Barney, Inc., 88
N.Y.2d 413, 424 (N.Y. 1996) (internal alterations omitted)).

Plaintiffs argue that they have sufficiently alleged the
underlying fraud in their aiding and abetting and conspiracy to
commit fraud claims because they alleged that "despite being
bound by a fiduciary duty towards IFS, Harris acted against its
interests, concealing that he had formed Benevida with an
objective directly antagonistic to IFS -- i.e., replace IFS in a
license agreement with Defendants." (Opp. at 19.)  Plaintiffs
have failed, however, to allege the second and third elements of
the underlying fraud.  First, they have not alleged any specific
communications where Harris omitted material information for the
purposes of inducing Plaintiffs' reliance.  Second, nowhere in
the complaint do Plaintiffs allege how Harris's omission
regarding the founding of Benevida induced Plaintiffs' reliance
in any way.  Without these allegations, Plaintiffs have failed
to allege the underlying fraud necessary to sustain their aiding
and abetting fraud and conspiracy to commit fraud claims.
Premium Mortg. Corp., 583 F.3d at 108.

### 3. Plaintiffs Aiding and Abetting Breach of Fiduciary Claim is Untimely

An aiding and abetting breach of fiduciary duty is time
barred when the underlying breach of fiduciary duty is time

barred. <u>Ackerman v. Nat'l Prop. Analysts, Inc.</u>, 887 F. Supp.
494, 508 (S.D.N.Y. 1992); <u>see also</u> <u>Ferring B.V. v. Allergan,</u>
<u>Inc.</u>, 932 F. Supp. 2d 493, 507 (S.D.N.Y. 2013) ("The applicable
limitations period for an aiding and abetting claim is the same
as for the underlying violation, which in this case is an
alleged breach of fiduciary duties.").  A breach of fiduciary
duty claim has a three year statute of limitations, which
accrues when "the fiduciary openly repudiates his or her
obligation—i.e., once damages are sustained." <u>Lebedev v.</u>
<u>Blavatnik</u>, 144 A.D.3d 24, 28 (N.Y. App. Div. 2016); <u>see also</u>
N.Y. C.P.L.R. § 214.

According to the complaint, the underlying breach of
fiduciary duty accrued no later than January 2014 when
"[b]lessed with Conde Nast's and Fremantle's approval and
support and the Benevida License Agreement," Harris, Howell, and
Benevida "began selling the food products developed and owned by
IFS," and "began and continued illicitly using IFS's
Intellectual Property and Confidential information, including
food recipes, meals, product packaging, product label approvals,
commercial marketing materials, [and] supplier and client
lists." (Compl. ¶ 85.)  This action was first brought on January
26, 2018, over three years after the latest date Plaintiffs'
claim could have accrued.  Therefore, Plaintiffs' aiding and
abetting breach of fiduciary claim is time barred.

Plaintiffs argue their aiding and abetting breach of fiduciary claim is not time barred because under C.P.L.R. 205(a), New York's savings statute, they had six months after the termination of their prior action in Florida state court to bring suit in this Court. (Opp. at 20-21.)  This argument fails because, as numerous courts have held, "actions commenced outside of New York are not considered 'prior actions' for purposes of triggering § 205(a)." Midwest Mem'l Grp., LLC v. Int'l Fund Servs. (Ireland) Ltd., No. 10 CIV. 8660 PAC, 2011 WL 4916407, at *6 (S.D.N.Y. Oct. 17, 2011) (collecting cases); see also Deadco Petroleum v. Trafigura AG, 151 A.D.3d 547, 547 (N.Y. App. Div.), leave to appeal denied sub nom. Petroleum v. Trafigura AG, 30 N.Y.3d 907 (2017) ("While the California action was timely commenced, the tolling provision of CPLR 205(a) does not avail plaintiff, because an out-of-state action is not a 'prior action' within the meaning of that provision."). Therefore, the termination of Plaintiffs' action in Florida does not toll the statute of limitations in this case.

Plaintiffs further argue that their claim is not time barred becaues "Benevida's contractual relationship with Defendants, and Harris's fiduciary duty breaches against IFS thereunder, continued until at least April of 2015," and, consequently, "under the continuing wrong doctrine, the claim cannot be dismissed as untimely." (Opp. at 21.)

In tort cases, a "cause of action accrues . . . at the time that the wrongful act first injured plaintiff and it does not change as a result of 'continuing consequential damages.'" Henry v. Bank of Am., 147 A.D.3d 599, 601, 48 N.Y.S.3d 67 (N.Y. App. Div. 2017).  The continuous wrong doctrine provides an exception to this rule and "serves to toll the running of a period of limitations to the date of the commission of the last wrongful act." Id. (quoting Selkirk v. State of N.Y., 249 A.D.2d 818, 819 (N.Y. App. Div. 1998)).

Here, Harris's alleged breaches of fiduciary duty are predicated on (1) his purported unilateral attempt to terminate the IFS Operating Agreement and to improperly dissolve IFS; (2) his purported stealing and intentional misuse of IFS' intellectual property, confidential information, and employees without IFS' written consent; (3) his forming, working for, and causing Benevida to compete against IFS; and (4) his usurping of business opportunities belonging to IFS.  All of this conduct occurred between December 2013 and January 2014, when Harris created Benevida and began selling food products. (Compl. ¶¶ 54-57.)  Any continued illicit use of Plaintiffs' intellectual property and confidential information after January 2014 can

only be considered "continuing consequential damage" and cannot be used to toll the statute of limitations.[1]

### 4. Plaintiffs Failed to Allege Defendants' Misappropriation of Trade Secrets

To establish liability for misappropriation of a trade secret under New York law, "a plaintiff must prove that it possessed a trade secret and that defendants used or are using the trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 664-65 (S.D.N.Y. 2008). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407 (1993) (citations omitted). In determining whether a trade secret exists, New York courts consider the following factors: "(1) the extent to which the information is known outside of his business; (2) the extent to

---

[1] Plaintiffs' reliance on Palmeri v. Willkie Farr & Gallagher LLP, 156 A.D.3d 564 (N.Y. App. Div. 2017), is misplaced. There, the plaintiff, a former client of a law firm, alleged numerous, distinct breaches of the fiduciary duty of loyalty by that law firm when it represented an adverse party in a court proceeding. Palmeri, 156 A.D.3d at 568. Thus, the New York court could conclude that while some of the conduct may have been time barred, "the continuing wrong doctrine toll[ed] the limitation period until the date of the commission of the last wrongful act." Id. Here, however, all the distinct wrongs are alleged to have occurred before the limitations period.

which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990).

Plaintiffs' misappropriation claim fails because Plaintiffs have failed to adequately allege the existence of a trade secret. Plaintiffs have generally alleged that their protected trade secrets are the IFS "food recipes" and "knowhow." (See e.g., Compl. ¶¶ 2, 40; see also Opp. at 23.) General "knowhow" is not a "formula, pattern, device or compilation of information" and, therefore, cannot be considered a trade secret. Ashland, 82 N.Y.2d at 407. Although food recipes may be trade secrets, Plaintiffs have failed to allege factors such as: (1) how IFS' food recipes provided them with any sort of commercial advantage; (2) the extent to which IFS took measures to guard its food recipes; (3) the value of the food recipes to IFS; and (4) the difficulty with which others could duplicate IFS' recipes. Integrated Cash Mgmt. Servs., Inc., 920 F.2d at 173. Without these allegations, Plaintiffs have not alleged

enough to establish the existence of a trade secret. See e.g.,
Reva Capital Markets LLC v. Northend Energy Ltd., 49 Misc. 3d
1219(A) (N.Y. Sup. Ct. 2015) ("Reva fails to allege that it took
steps to guard the secrecy of any material it disclosed. The
pleading also fails to allege the value of the information to
its business, or how it gives Reva an edge over its competitors.
In short, Reva fails to allege a protectable trade secret.").

### III. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure instructs
courts to "freely give leave" to amend "when justice so
requires." Fed. R. Civ. P. 15(a)(2).  Amendment is not
warranted, however, "absent some indication as to what [a
plaintiff] might add to [its] complaint in order to make it
viable." Shemian v. Research In Motion Ltd., 570 F. App'x 32, 37
(2d Cir. 2014) (quoting Horoshko v. Citibank, N.A., 373 F.3d
248, 249 (2d Cir. 2004)).

Accordingly, should Plaintiff wish to amend its complaint,
it must demonstrate (1) how it will cure the deficiencies in its
claims by filing a proposed amended complaint and (2) that
justice requires granting leave to amend.  Such demonstration
shall be filed within 30 days of the date of this Opinion.

### CONCLUSION

For the reasons stated above, Conde Nast and Fremantle's
motion to dismiss the complaint is GRANTED.  The Clerk of Court

is respectfully directed to terminate the motions docketed at

ECF Nos. 26 and 29.

SO ORDERED.
New York, New York
November 26, 2018

John F. Keenan
United States District Judge