**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
INSPIRED CAPITAL, LLC, and    :
ERICA GARY, derivatively on   :
behalf of INSPIRED FOOD       :
SOLUTIONS, LLC,               :
                              :
          Plaintiffs,         :
                              :
   -against-                  :      No. 18 Civ. 0712 (JFK)
                              :      **OPINION & ORDER**
CONDE NAST, an unincorporated :
division of Advance Magazine  :
Publishers, Inc., and         :
FREMANTLEMEDIA NORTH AMERICA, :
INC., a foreign corporation,  :
                              :
          Defendants.         :
------------------------------ X

<u>APPEARANCES</u>

FOR PLAINTIFFS INSPIRED CAPITAL, LLC and ERICA GARY
     Scott Ross Zarin, Esq.
     ZARIN & ASSOCIATES, P.C.

FOR DEFENDANT CONDE NAST
     Cynthia Evans Neidl, Esq.
     GREENBERG TRAURIG, LLP

FOR DEFENDANT FREMANTLEMEDIA NORTH AMERICA, INC.
     Judith Ann Lockhart, Esq.
     CARTER LEDYARD & MILBURN LLP
     Lauren H. Bragin, Esq.
     Sean Riley, Esq.
     GLASER WEIL LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Plaintiffs Inspired

Capital, LLC ("Inspired") and Erica Gary ("E. Gary"),

derivatively and on behalf of Inspired Food Solutions, LLC

("IFS"), for leave to amend their complaint against Defendants

1

Conde Nast and FremantleMedia North America, Inc. ("Fremantle").
For the reasons set forth below, Plaintiffs' motion is denied.

## I.   BACKGROUND

### A. Facts

The below account of the case's underlying facts and
procedural history is drawn from Plaintiffs' pleadings and the
parties' submissions in support of and in opposition to the
instant motion.

### 1. The Formation of IFS and Inspired

Calvin Harris ("Harris") formed IFS -- a Florida limited
liability company with its principal place of business in Miami-
Dade County, Florida -- in 2012 to develop, manufacture, and
distribute lifestyle food brands and products. (Compl. ¶ 15.)
Harris hired E. Gary as consultants to help raise capital from
investors, including Issa Gary ("I. Gary") and Demetrius Walton
("Walton"). (Id. ¶ 16.)  Harris explained to I. Gary and Walton
that he intended to develop a line of frozen food entrees that
would be owned by IFS but marketed and promoted by Fremantle and
Conde Nast under Conde Nast's SELF Brand. (Id. ¶ 17.)  I. Gary
and Walton decided to invest in IFS and formed the company
Inspired, a Florida limited liability company with its principal
place of business in Miami-Dade County, Florida, to be able to
do so. (Id. ¶ 18.)

On or about March 2013, IFS and Inspired entered into a Memorandum of Understanding ("MOU") pursuant to which Inspired infused an initial $100,000 of working capital into IFS to secure a marketing and promotion agreement with Conde Nast and Fremantle, Conde Nast's authorized representative. (Id. ¶ 20.)

## 2. IFS' Operating Agreement

In the spring of 2013, Inspired, Harris, and E. Gary entered into the Florida Limited Liability Company Agreement of Inspired Food Solutions, Inc. (the "Operating Agreement"), pursuant to which Inspired made another capital contribution of $500,000. (Id. ¶¶ 21-22.) In return, Inspired received a fifteen percent interest in IFS and the right to quarterly royalties and other payments, including a $1.5 million lump sum payment on or before December 31, 2018. (Id. ¶ 22.) Harris made no capital contribution to IFS but retained eighty-four percent of the company. (Id.) E. Gary received the remaining one percent. (Id. ¶ 23.)

## 3. The License Agreement with Conde Nast and Fremantle and IFS' Development of Recipes and Food Products

After executing the Operating Agreement, Harris started developing food recipes and spent about eight months testing and refining them. (Id. ¶ 30.) On March 15, 2013, he executed a Binding Merchandising Deal Memo ("Deal Memo") with Conde Nast and Fremantle, which outlined the terms pursuant to which Conde Nast would grant a license to IFS to use Conde Nast's SELF

3

trademark in exchange for royalties. (Id. ¶ 31.) In May 2013,
IFS, Conde Nast, and Fremantle executed a License Agreement (the
"IFS License Agreement"), which adopted the terms outlined in
the Deal Memo. (Id. ¶ 32.) The IFS License Agreement also
contained a confidentiality provision prohibiting the parties
from disclosing or using each other's confidential information.
(Compl. Ex. C § 12.8, ECF No. 1.)

### 4. Harris Dissolves IFS and Forms Benevida

On or about November 26, 2013, Harris contacted Steve
Howell ("Howell"), an investor, and informed him of an
investment opportunity relating to the frozen food products IFS
developed. (Compl. ¶ 41.) Shortly afterwards, Harris and Howell
began to devise ways to oust Inspired and E. Gary from IFS so
that they, along with Conde Nast and Fremantle, would be the
ones to profit from IFS's "food recipes, the food products
developed with the recipes and other IFS[] Intellectual Property
and Confidential Information." (Id. ¶¶ 40, 42.) They first
planned to induce E. Gary and Inspired into accepting a buyout
from Howell by claiming that IFS was insolvent. (Id. ¶¶ 43-44.)
There were two reasons, however, why IFS was not insolvent:
first, Inspired and E. Gary had secured additional financing for
the company, and, second, IFS had secured an extension for an
upcoming payment owed to Conde Nast and Fremantle that IFS had
been at risk of missing. (Id. ¶¶ 44-47.) Thus, to claim IFS's

insolvency, Harris had to find a way to turn down the additional financing Inspired and E. Gary had secured. (Id. ¶ 47.) To that end, on December 29, 2013, he sent them an email claiming they were forcing him to accept their financing proposal "under duress" and that he would prefer to discuss a counter-proposal. (Id. ¶ 48.) He forwarded them Howell's buyout proposal the following day. (Id. ¶ 51.) Inspired made a counter offer, which Howell rejected. (Id. ¶ 53.)

Unable to force Inspired and E. Gary to accept a buyout, Harris and Howell "decided they would steal IFS's Intellectual Property, Confidential Information, and employees and continue doing business as usual with Conde Nast and Fremantle." (Id. ¶ 54.) To enact this plan, Harris first emailed Inspired and E. Gary to tell them that IFS was insolvent and dissolved effective immediately -- an action Plaintiffs "immediately rejected." (Id. ¶ 55.) Harris then, along with Howell, formed Benevida Foods, LLC ("Benevida") to continue to market and produce food products with Conde Nast and Fremantle. (Id. ¶ 57).

### 5. Conde Nast and Fremantle Contract with Benevida

On or before January 7, 2014, Harris contacted Conde Nast's Vice President, John Kulhawik ("Kulhawik"), and Fremantle's Vice President of Consumer Products, Andrea Brent ("Brent"), "to get support and assistance" in selling IFS' food recipes and products through Benevida. (Id. ¶ 59.) He told them about

5

Benevida and that he hoped to contract with Conde Nast and Fremantle to "market and promote the sale of the IFS's food products via Benevida instead of via IFS." (Id. ¶ 62.) According to Plaintiffs, "Kulhawik and Brent knew that IFS and not Benevida owned the IFS food recipes and food products and that Benevida did not have the right to use the IFS food recipes to sell the IFS food products." (Id. ¶ 63.) Rather than reject Harris's offer, however, Defendants agreed to help Harris and Howell. (Id. ¶ 64.) Moreover, they concealed their role in Harris and Howell's plan. Neither Kulhawik, Brent, or Fremantle's in-house counsel informed IFS, or requested Harris inform IFS, of Benevida's intentions to sell the IFS food products. (Id. ¶¶ 65-75.)

On January 13, 2014, Kulhawik emailed Harris a letter immediately terminating the IFS License Agreement and IFS' ability to distribute its food products under Conde Nast's SELF trademark. (Id. ¶ 77.) In his email, Kulhawik made no mention to Inspired or E. Gary "that he knew of and had agreed to have Conde Nast and Fremantle help Harris and Howell with their plan to have Benevida deviously sell the food products developed with IFS's recipes created with the monies Inspired infused into IFS." (Id. ¶ 78.)

Two days after sending the termination email, Kulhawik emailed Harris at his personal e-mail address to inform him that

"Conde Nast was on board with working with Benevida while the legal issues regarding IFS were worked out and that Conde Nast and Fremantle would continue preparing the public relations campaign and the sales launch of the food products, albeit under Benevida's and not IFS's name." (Id. ¶ 79.) On January 31, 2014, Conde Nast and Fremantle entered into a License Agreement with Benevida substantially similar to the IFS License Agreement. (Id. ¶ 82.)

In January 2014, Benevida began selling its food products. (Id. ¶ 85.) During Benevida's period of operation, it "continued illicitly using IFS's Intellectual Property and Confidential information, including food recipes, meals, product packaging, product label approvals, commercial marketing materials, and supplier and client lists, despite a Florida Court entering an injunction prohibiting [it] from doing so." (Id.)

## B. Procedural History

On March 3, 2014, Plaintiffs sued Harris, Howell and Benevida in Florida state court. (Neidl. Decl. Ex. 3 at 14 (May 23, 2018), ECF No. 27-3.) On March 13, 2014, Plaintiffs filed an emergency motion for a temporary injunction, which the Florida court granted. (Compl. Ex. K at 1-4.) On August 30, 2016, the Florida court granted Plaintiffs' motion to file an amended complaint, which asserted breach of contract and

fiduciary duty claims against Harris. (Neidl Decl. Ex. 6 at 15-19 (May 23, 2018), ECF No. 27-6.)  It also asserted aiding and abetting breach of fiduciary duty, civil conspiracy, and misappropriation of trade secrets claims against Conde Nast and Fremantle. (Id. at 22-23, 27-28, 30-31).  On February 11, 2017, the Florida court granted a motion to dismiss brought by Conde Nast and Fremantle based on the forum selection clause in the License Agreement. (Neidl Decl. Ex. 7 at 3-4 (May 23, 2018), ECF No. 27-7.)

On January 26, 2018, Plaintiffs filed their complaint in this action asserting six claims against Defendants:  (1) breach of contract, (2) aiding and abetting breach of fiduciary duty, (3) fraudulent concealment, (4) aiding and abetting fraud, (5) conspiracy to commit fraud, and (6) misappropriation of trade secrets.  The Court dismissed that complaint in its entirety on November 26, 2018.  Plaintiffs now seek leave to amend their claims for aiding and abetting breach of fiduciary duty, aiding and abetting fraud, conspiracy to commit fraud, and misappropriation of trade secrets.

## II.  LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  "It is 'within the sound discretion of the district court to grant or deny leave to amend.'" Cracolici v.

_Saunders_, No. 18-CV-3807 (CS), 2019 WL 1862470, at *3 (S.D.N.Y.
Apr. 25, 2019) (quoting <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482
F.3d 184, 200 (2d Cir. 2007)). "Leave to amend, though
liberally granted, may properly be denied for: 'undue delay, bad
faith or dilatory motive on the part of the movant, repeated
failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of
the amendment, futility of amendment . . . .'" <u>Ruotolo v. City
of N.Y.</u>, 514 F.3d 184, 191 (2d Cir. 2008) (quoting <u>Foman v.
Davis</u>, 371 U.S. 178, 182 (1962)). "[W]here the plaintiff is
unable to demonstrate that he would be able to amend his
complaint in a manner which would survive dismissal, opportunity
to replead is rightfully denied." <u>Hayden v. County of Nassau</u>,
180 F.3d 42, 53 (2d Cir. 1999).

### III. DISCUSSION

### A. Claim for Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs have not added any new allegations to their
aiding and abetting breach of fiduciary duty claim. Rather,
they dispute the Court's prior holding that their claim is
untimely under N.Y. C.P.L.R. § 205(a). (<u>See</u> Mem. of Law in Supp.
of Pls.' Mot. for Leave to File Am. Compl. at 3, ECF No. 38
[hereinafter "Mem."].) A motion to amend is not the proper
procedural device to dispute a Court's prior judgment. Instead,
Plaintiffs should have filed a motion for reconsideration within

9

fourteen days. Local Civ. R. 6.3. Despite Plaintiffs' failure
to timely seek reconsideration, the Court will address
Plaintiffs' argument under the standard to be applied to a
motion for reconsideration.

"Reconsideration of a previous order by the court is an
'extraordinary remedy to be employed sparingly in the interests
of finality and conservation of scarce judicial resources.'" In
re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y.
2011) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F.
Supp. 2d 613, 614 (S.D.N.Y. 2000)). To prevail on a motion for
reconsideration, the moving party must "point to controlling
decisions or data that the court overlooked -- matters, in other
words, that might reasonably be expected to alter the conclusion
reached by the Court." Stagg P.C. v. U.S. Dep't of State, No. 15
Civ. 8468 (KPF), 2019 WL 1863418, at *1 (S.D.N.Y. Apr. 25, 2019)
(quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.
1995)). "Compelling reasons for granting a motion for
reconsideration are limited to 'an intervening change of
controlling law, the availability of new evidence, or the need
to correct a clear error or prevent manifest injustice.'" Id.
(quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956
F.2d 1245, 1255 (2d Cir. 1992)). A motion for reconsideration
is "not a vehicle for relitigating old issues, presenting the
case under new theories, securing a rehearing on the merits, or

otherwise taking 'a second bite at the apple.'" <u>Analytical</u>
<u>Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir.
2012) (quoting <u>Sequa Corp. v. GBJ Corp.</u>, 156 F.3d 136, 144 (2d
Cir. 1998)); <u>see also</u> <u>Stone v. Theatrical Inv. Corp.</u>, 80 F.
Supp. 3d 505, 506 (S.D.N.Y. 2015) (observing that a motion for
reconsideration "is neither an occasion for repeating old
argument previously rejected nor an opportunity for making new
arguments that could have been previously advanced.").

Here, Plaintiffs have not pointed to any controlling
decision the Court overlooked. Rather, they rehash their
argument that N.Y. C.P.L.R. § 205(a) applies to a "prior action"
commenced outside of New York and point to cases previously
cited in their brief in opposition to Defendants' motion to
dismiss. (<u>Compare</u> Mem. at 2-5, <u>with</u> Pls.' Mem. in Opp. to Defs.'
Mot. to Dismiss at 20-21, ECF No. 31.). In doing so, they are
merely "repeating [an] old argument previously rejected." <u>Stone</u>,
80 F. Supp. 3d at 506. As Plaintiffs have not offered any cases
the Court overlooked in its prior judgment, the Court declines
to reconsider its decision to dismiss Plaintiffs' aiding and
abetting breach of fiduciary claim, and, accordingly, their
motion for leave to replead that claim is denied. <u>Shrader</u>, 70
F.3d at 257 ("[A] motion to reconsider should not be granted
where the moving party seeks solely to relitigate an issue
already decided.").

## A. Aiding and Abetting Fraud and Conspiracy to Commit Fraud Claims

In its November 26, 2018 Opinion & Order, the Court held that Plaintiffs had failed to plead claims for aiding and abetting fraud and conspiracy to commit fraud because they had failed to allege any underlying fraud. See Inspired Capital, LLC v. Conde Nast, No. 18 CIV. 0712 (JFK), 2018 WL 6173712, at *6 (S.D.N.Y. Nov. 26, 2018). To establish the existence of a fraud, a plaintiff must allege "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 1-3. 108 (2d Cir. 2009) (quoting Lama Holding v. Smith Barney, Inc., 88 N.Y.2d 413, 424 (N.Y. 1996)). The Court held that Plaintiffs had failed to allege (1) "any specific communications where Harris omitted material information for the purposes of inducing Plaintiffs' reliance," and (2) "how Harris's omission regarding the founding of Benevida induced Plaintiffs' reliance in any way." Inspired Capital, 2018 WL 6173712, at *6.

Plaintiffs have attempted to cure this defect by adding three new allegations: (1) that Harris had a plan to use the IFS Capital to develop "IFS Property and Confidential Information for himself," which he would then "parlay" into his

12

own deal with Conde Nast and Fremantle free of the "terms and obligations of the IFS Operating Agreement" (Am. Compl. ¶ 29, ECF No. 37-1); (2) that "upon the execution of the IFS Operating Agreement, and periodically thereafter, Harris falsely represented to IFS, via Plaintiffs, that the IFS Capital would be used, and was being used, strictly for the benefit of IFS . . . failing to disclose that his efforts would be, and were instead aimed at securing for himself a relationship with Conde Nast and Fremantle" (id. ¶ 30); and (3) that although IFS "justifiably and reasonably relied on Harris's representations," had they been informed that he "would use, and was in fact using the IFS Capital for his own objective," they would have "stopped the disbursement of the IFS Capital" (id. ¶ 31).

Defendants argue (Opp. at 11) that allowing this amendment would be futile because Plaintiffs have failed to observe Federal Rule of Civil Procedure 9(b), which requires claimants to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). The Court agrees. The Second Circuit has explained that Rule 9(b)'s heightened pleading requirement "serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits." ATSI Commc'ns, Inc. v. Shaar Fund, Ld., 493 F.3d 87, 99 (2d Cir. 2007). "Consequently, allegations

13

that 'fail to specify the time, place, speaker, . . . and content' of the alleged fraud 'lack the particulars required by Rule 9(b).'" Travelex Currency Servs., Inc. v. Puente Enterprises, Inc., No. 18 CIV. 1736 (ER), 2019 WL 1259102, at *5 (S.D.N.Y. Mar. 19, 2019) (quoting Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986)). "Nonetheless, the 'adequacy of particularized allegations under Rule 9(b) is case- and context-specific.'" Id. (quoting United States ex rel. v. Am. Med. Response, Inc., 865 F.2d 71, 81 (2d Cir. 2017)).

The amended complaint does not identify specific misrepresentations by Harris. Rather, as noted above, the amended complaint states only that "upon the March 2013 execution of the IFS Operating Agreement, and periodically thereafter, Harris falsely represented to IFS, via Plaintiffs, that the IFS Capital would be used, and was being used, strictly for the benefit of IFS." (Am. Compl. ¶ 30.) This description is woefully inadequate to allege fraud. It does not allege (1) the specific statements made by Harris and the time each statement was made, (2) "the form in which the [assurances] were made, (e.g., whether such [assurances] were oral or written)," or (3) "to whom the [assurances] were made" (e.g., whether they were made to E. Gary, I. Gary, or Walton, individually or collectively). Travelex, 2019 WL 1259102, at *6. Without this information, the Court cannot plausibly infer that Harris

14

committed the underlying fraud Defendants supposedly aided and abetted. See Defer LP v. Raymond James Fin., Inc., 654 F. Supp. 2d 204, 214 (S.D.N.Y. 2009) ("[P]laintiff alleges that defendants instructed their representatives to make . . . misstatements . . . . The complaint, however, fails to allege exactly who made the misstatements and to whom, when (other than throughout the Class Period), where, how frequently and in what form. While the complaint alleges the content of the statement itself and why plaintiff believes it to have been fraudulent, the circumstances in which the statement allegedly was made are not identified sufficiently to meet the stringent standards of Rule 9(b)."). Accordingly, because Plaintiffs failed to cure the deficiency identified in their aiding and abetting fraud and conspiracy to commit fraud claims with sufficient particularity, their motion for leave to amend those claims is denied as futile.

**B. Misappropriation of Trade Secrets Claim**

The Court dismissed Plaintiffs' misappropriation of trade secrets claim because they had failed to allege any protectable trade secrets. See Inspired Capital, 2018 WL 6173712, at *8. Plaintiffs claim that they have remedied this defect by adding allegations regarding (1) the commercial advantage the recipes gave IFS over competitors (Am. Compl. ¶ 108), and (2) the IFS Operating Agreement, which prohibited "members and others from

disclosing or misusing IFS's Intellectual Property and
Confidential Information" (id. ¶ 109). The Court declines to
decide whether these allegations are sufficient to allege the
existence of a trade secret because this claim is time-barred.

Under New York law, a misappropriation of trade secrets
claim is subject to a three-year statute of limitations. N.Y.
C.P.L.R. § 214; Andrew Greenberg, Inc. v. Svane, Inc., 36 A.D.3d
1094, 1098, 830 N.Y.S.2d 358, 362 (2007). "Misappropriation
first accrues either when defendant discloses the trade secret
or when he first makes use of plaintiff's ideas." Galet v.
Carolace Embroidery Prod. Co., No. 91 CIV. 7991 (SS), 1994 WL
542275, at *4 (S.D.N.Y. Oct. 5, 1994), aff'd, 122 F.3d 1056 (2d
Cir. 1995) (quoting Lemelson v. Carolina Enterprises, Inc., 541
F. Supp. 645, 648 (S.D.N.Y. 1982)). A court can only dismiss a
claim on statute of limitations grounds when it is apparent from
the face of the complaint that a claim is time-barred. Frand v.
Woldiger, No. 18 CV 4816 (VB), 2019 WL 1897453, at *3 (S.D.N.Y.
Apr. 29, 2019) ("When a defendant raises timeliness in a pre-
answer motion to dismiss, her affirmative defense may be granted
only if it is clear on the face of the complaint that
the statute of limitations has run.")

Here, it is apparent from the face of the complaint that
Plaintiffs filed their complaint more than three years after
their misappropriation claim accrued. Plaintiffs allege in

their amended complaint that "in January 2014, Harris, Howell, and Benevida began selling the food products IFS developed and owned, and began and continued illicitly using IFS's Intellectual Property and Confidential Information, including food recipes, meals, product packaging, product label approvals, commercial marketing materials, supplier and client lists . . . ." (Am. Compl. ¶ 82.) Thus, Plaintiffs' claim accrued in January 2014 at the latest, when "[b]lessed with Conde Nast's and Fremantle's approval and support," Benevida disclosed IFS's alleged trade secrets by selling products derived from those trade secrets. (Id.) Plaintiffs, however, did not file their complaint until January 2018 and, as a result, their misappropriation claim is time-barred.

Plaintiffs contend that their misappropriation claim is not time-barred because they filed an action in Florida state court within the statute of limitations period and, accordingly, the statute of limitations period is tolled pursuant to N.Y. C.P.L.R. 205(a). (Reply at 9.) The Court disagrees. As the Court stated in its previous decision and declines to revisit here, an out of state action cannot constitute a "prior action" under N.Y. C.P.L.R. 205(a). See Inspired Capital, 2018 WL 6173712, at *6. Thus, as with Plaintiffs' aiding and abetting breach of fiduciary duty claim, the Florida action cannot toll

the statute of limitations period on Plaintiffs' misappropriation claim.

The Court also adds that Plaintiffs cannot avail themselves of the continuing tort exception here. New York recognizes a "'continuing tort' exception that applies when a defendant keeps the alleged trade secret confidential, yet continues to use it for its own benefit." PaySys Int'l, Inc. v. Atos Se, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *9 (S.D.N.Y. Dec. 5, 2016). However, once a plaintiff "ha[s] knowledge of the defendant's misappropriation and use of its trade secret, the continuing tort doctrine does not apply." VoiceOne Commc'ns, LLC v. Google Inc., No. 12-cv-9433 (PGG), 2014 WL 10936546, at *10 (S.D.N.Y. Mar. 31, 2014) (citations omitted); see also PaySys Int'l, 2016 WL 7116132, at *9 (same). Here, as explained above, Plaintiffs complaint makes apparent that they had knowledge of Defendants' alleged use of their trade secrets by January 2014. Thus, they cannot avail themselves of the "continuing tort" exception.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion to amend is DENIED and their claims for aiding and abetting breach of fiduciary duty, aiding and abetting fraud, conspiracy to commit fraud, and misappropriation of trade secrets are dismissed with prejudice. The Clerk of Court is respectfully instructed to terminate the motion docketed at ECF No. 37 and close the case.

**SO ORDERED.**

Dated:    New York, New York
          May 20, 2019

                                          JOHN F. KEENAN
                             United States District Judge